# Supreme Court Decisions.

## RAILWAY RELIEF ASSOCIATIONS.

THE STATE OF OHIO, EX REL SHEETS, ATTORNEY-GENERAL, V.
THE PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS
RAILWAY CO.

Decided, March 3, 1903.

*Association Formed by Railway Company—For Relief Fund and Benefits—
By Voluntary Contribution from Wages of Employes—Railway Com-
pany to Have Charge of Funds and Relief Distribution—Such Associa-
tion not an Insurance Company—Not Contrary to Public Policy—But
Within Corporate Powers of Railway Company.*

1 An association established by a railway company, composed of some or
all of its employes and the company, for the purpose of accumulating
and maintaining a relief fund created by the voluntary contributions
from their wages by employes who apply for membership in said fund
and are admitted, the railway company to take charge of and be respon-
sible for the funds, make up deficiencies in the same, supply facilities
for conducting the business and pay the operating expenses, supply
surgical attendance for injuries received in its service, and to pay the
members or their designated beneficiaries the stated share of the benefit
fund so raised from wages retained by the company, is not an insurance
company or association; and in agreeing to perform, and in performing
each and all of said acts, such railway company is not engaged in the
transaction of insurance business.

2. The said acts of the railway company are within the implied powers of a
railway corporation and are not *ultra vires*.

3. Nor are they contrary to public policy.

ERROR to the Circuit Court of Franklin County.

The plaintiff in error filed in the Circuit Court of Franklin
County, a petition in *quo warranto* against the railway company,
now defendant in error, in which petition it is alleged that, on or
about the twenty-eighth day of August, A. D., 1890, the Pittsburgh,

45

Cincinnati, Chicago & St. Louis Railway Co. and the Chicago, St. Louis & Pittsburgh Railroad Co. were consolidated under and pursuant to the laws of the state of Ohio, under the name of the defendant, the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co., whereby, under the latter name it became and still is a corporation duly organized under and by virtue of the laws of the state of Ohio. It is further stated, that the purpose of the incorporation of said company was to "acquire, build, maintain and operate a line of railroad along certain lines and between certain points designated in its articles of consolidation and incorporation."

The relator then charges that "in violation of law and in abuse of its corporate powers, and in the exercise of privileges, rights and franchises not conferred upon it by law, the defendant from and after the first day of October, 1890, has been engaged and still is engaged in transacting the business of life and accident insurance, whereby it insures its employes against sickness, accident and death, in consideration of the payment, to-wit., by the insured of stipulated monthly sums, and to agreement on the part of such insured, that in case of accident or death, neither the insured nor his legal representatives shall be entitled to ask, demand or receive by suit or otherwise, any compensation whatever on account of such injury or death resulting from the negligence of the defendant, or the Pennsylvania Co., or their servants or agents."

The relator further states that "the profits, if any, growing out of said business of insurance belong to the defendant, and the losses, if any, incident thereto, are borne by it."

The prayer is for a judgment ousting the defendant from further continuing the business of insurance by means of its relief department, or in any other manner whatever.

The defendant answered, admitting the official character of the relator, and that the defendant is a corporation duly organized in the manner, at the time and for the purposes stated in the petition. Each and every other allegation of the petition is denied.

In the circuit court the parties agreed upon the following facts, and other facts which appear in the opinion:

"The parties to this cause, for the purpose of the trial of the issues made by the pleadings herein, agree upon the following facts, subject to exceptions by either party at the hearing for irrelevancy or incompetency:

"First. The printed pamphlet entitled 'Regulations governing the voluntary relief department of the Pennsylvania Lines west of Pittsburgh' hereto attached, marked 'Exhibit A' and made part hereof, is a true and correct statement of the organization, regulations and mode of conducting the business of the relief department of the defendant, mentioned in the petition herein.

"The defendant has not been from or after the said first day of October, 1890, and is not now engaged in transacting the business of life and accident insurance, or either, unless the business set forth in said printed pamphlet should be held to be such life and accident business.

"Second. The defendant, since about the said twenty-eighth day of August, 1890, has owned and still does own more than one thousand miles of railroad, and during said period has operated and still does operate more than twenty-three hundred miles of railroad extending from the city of Pittsburgh, Pennsylvania, through the state of Ohio, to the cities of Cincinnati, Chicago, Indianapolis and Louisville, with many branch lines, and together with the lines of the Pennsylvania Co., mentioned in said regulations, forms one of the main systems of railroads between the Atlantic seaboard and the Mississippi river."

The third fact agreed upon is a table showing the number of employes of the defendant company at the close of each fiscal year from June 30, 1890, to June 30, 1901, and the number of employes who at such times were actually members of said relief fund, and also shows the percentage of membership to the number of employes—the percentage being 47.7 in 1890 and 65.9 in 1901.

The fourth fact agreed upon is a table showing the amount contributed by members during each triennial period, amounts of benefits paid members during such period, and the operating expenses paid by defendant.

The fifth and sixth facts agreed upon relate to amounts of benefit payments according to certain regulations of the relief department.

Among sections of the regulations of this relief department above referred to under "Exhibit A," the following are quoted as pertinent in this case:

"1. 'The voluntary relief department' is a department of the service of the several railroad companies, respectively, associated as set forth in the agreement to which these regulations are attached, in the executive charge of a superintendent, whose directions in carrying out its regulations are to complied with, subject to the control of the general manager.

"2. In these regulations, unless otherwise indicated, the titles 'company' and 'general manager' will be understood as meaning the Pennsylvania Co., and the general manager of that company.

"3. The object of this department is the establishment and management of a fund to be known as 'the relief fund,' for the payment of definite amounts to employes contributing to the fund, who under the regulations shall be entitled thereto, when they are disabled by accident or sickness, and in the event of their death, to the relatives or other beneficiaries specified in the applications of such employes.

"4. The relief fund, from which the proposed benefits are to be paid, will be formed by voluntary contributions from employes; appropriations, when necessary to make up any deficit, by the several companies respectively, and income or profit derived from investments of the moneys of the fund, and such gifts or legacies as may be made for the use of the fund.

"5. The associated companies under the stipulations of the agreement between themselves hereinbefore set forth, will take general charge of the department, guarantee the fulfillment of the obligations assumed by them respectively, in conformity with the regulations from time to time established, supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof. The company will take charge of the funds and be responsible for their safe keeping."

Section 6 provides for the selection of an advisory board, one member to be chosen by the contributing members, of the six or more constituent companies, composing the association, and three to be selected by the board of directors of the Pennsylvania Co., and three to be selected by the directors of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.

"10. The moneys received for the relief fund shall be held by the company in trust for the relief department. The advisory committee shall, subject to the approval of the board of directors of the company, direct the investment, and any changes therein, of money which is not required to be kept on hand for current use.

"Such investments shall be in the name of the company, 'in trust for the relief department.'

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"17. No employe will be required to become a member of the relief fund."

The other important facts necessary to an understanding of the case are stated in the opinion.

The circuit court found for the defendant and dismissed the petition. Error is prosecuted in this court to reverse the judgment of that court.

*J. M. Sheets,* Attorney-General; *J. E. Todd,* Assistant Attorney-General, and *Smith W. Bennett,* for plaintiff in error.

I. Does the scheme or plan of business outlined, and fully set out in the agreed statement of facts, constitute the business of insurance?

Definitions of insurance are given by the text-book writers, and have been frequently adopted by courts: Am. & Eng. Ency. of Law; May on Ins., Sec. 1; Phillips on Ins., Sec. 1; Joyce on Ins., Sec. 2; *Commonwealth* v. *Wetherbee,* 105 Mass., 149.

We think it may be freely stated that the definitions by the above authorities represent the consensus of modern judicial definitions of the subject of insurance. In some of the cases, however, may be found a definition copied from early writers upon the subject as follows: "Insurance is a contract by which one party, in consideration of a price paid to him, adequate to the risk, becomes security to the other, that he shall not suffer loss, prejudice or damage by the happening of the perils specified to certain things, which may be exposed to them." May on Ins., Sec. 1, note; 2 Bl. Com., 458.

Such a definition is radically defective. Can it be said that a contract is not an insurance contract unless the consideration is *"adequate to the risk?"* Is an insurance contract to be so far differentiated from all other contracts, that the court must determine as to the *adequacy* of the consideration? I suppose that ordinarily, as a business proposition, an insurance company would attempt to fix its premium rates (considerations) high enough to be "adequate to the risk." But suppose it does not? Suppose, as has happened in hundreds of cases, that an insurance company should fix its rates too low, and in course of time should find that it could no longer continue business because its premium rates were not sufficient to carry the risks, would it be said that such a company had not been in the insurance business, that its contracts, or policies, were not insurance contracts, because, forsooth, it had not charged a consideration "adequate to the risk?"

Neither the times and amount of payments by the insured, nor the modes of estimating or securing the payment of the sum to be paid by the insurer, affect the question.

In the court below this definition of insurance was urged by counsel for defendant, and it was insisted that the defendant com-

pany was not engaged in the business of insurance because it was asserted the company received no "consideration adequate to the risk" assumed by it, and because no portion of the "contributions" of the members went to or became the property of the company. We can not believe that either of these propositions are of great weight. If the company receives a consideration for the indemnity or insurance it promises, it is of but little importance whether this consideration is adequate to the risk, or whether it is a part of the monthly contributions of the members.

Tested by the definitions above given, the vital elements of an insurance contract are (1) A risk or hazard to which the insured is exposed, either in his person or property; (2) Consideration moving from the insured to the insurer; (3) An obligation to pay on the part of the insurer upon the happening of the contingency insured against.

First. All these elements are present in the contract between the defendant company and its employes who are members of its voluntary relief department. The risk or hazard, insured against, is the usual risk assumed by life and accident insurance companies. The only distinction between the business of the voluntary relief department and the business of other accident and life insurance companies with respect to the risk, being, that the members of the voluntary relief department, because of the nature of their employment are more liable to accident, and accidental death, than is ordinarily the case with policy holders in other companies.
7890$.. 7890$.. 12345 -).' ? (|' 12345 7890$ 12345 7890898

Second. The consideration moving from the insured is found in his agreement that in case he receives the payments provided in the relief fund, in case of accident, injury or death, he will release the company from liability on account of such injury. This is a valuable consideration which inures directly to the benefit of the company. It is distinct from and in addition to the monthly contributions to the relief fund. It may be true that the company derives no benefit from the contributions to the relief fund. It does not follow that the company receives no benefit from the contract.

The "relief fund" in this business is similar to the "mortality fund," and "reserve fund" in other insurance companies.

It is to be remembered that the company stands in a dual relation to the members of this relief department, i. e., that of in-

surer and employer: As an employer it is conducting a business of great hazard to the life and health of its employes. The dangers of railroading are too well known to require comment. No other class of employers are so frequently called upon to respond in damages for personal injury as railroad companies. To be relieved from the payment of damages, as well as the troublesome and vexatious litigation growing out of personal injury to its employes, is a "consummation devoutly to be wished." If, then, the company can, by means of its relief department, relieve itself of such liability, or even diminish the number of suits brought and judgments rendered against it, why is it not as valuable a consideration to the company as a sum of money paid into its treasury?

Third. It will not be questioned that the contract imposes an obligation on the part of the company to pay upon the happening of the contingency specified in the contract, and the fulfillment of the conditions of the contract on the part of the employe. In other words, there can be no question that the company guarantees to indemnify the employe in case of accidental injury or death. The opinion of Judge Spear in *Railway Co.* v. *Cox,* 55 Ohio St., 516, is as applicable to the obligation assumed by the company as it is to the consideration moving from the employe.

We have, then, in this contract, all the elements of an insurance contract. What is there about it to distinguish it from an insurance contract? In the case of *Railway Co.* v. *Cox,* 55 Ohio St., 497, this court considered the contract between the defendant company and its employes and held:

(1) Such contract is not interdicted by the act of April 2, 1890, 87 O. L., 149, "for the protection and relief of railroad employes, etc.;" (2) The contract is not contrary to public policy; (3) The contract does not lack mutuality; (4) It is based upon a valid consideration.

Judge Spear, in his opinion, cites a long list of authorities, which consider the contract of the defendant company and similar contracts used by other railroad companies in the operation of relief departments. To this list cited by Judge Spear might be added the following cases: *Maine* v. *Railroad Co.,* 70 N. W. Rep., 630; *Railroad Co.* v. *Wymore,* 58 N. W. Rep., 1120; (40 Neb., 645); *Vickers* v. *Railroad Co.,* 71 Fed. Rep., 139; *Spitze* v. *Railroad Co.,*

75 Md., 162; *Stale, for use of Black* v. *Railroad Co.,* 36 Fed. Rep., 655; *Eckman* v. *Railroad Co.,* 48 N. E. Rep., 496; *Railroad Co.* v. *Moore,* 53 N. E. Rep., 290; *Railroad Co.,* v. *Montgomery,* 152 Ind., 1; *Beck* v. *Railroad Co.,* 63 N. J. L., 232; *Railroad Co.* v. *Miller,* 76 Fed. Rep., 439; *Miller* v. *Railroad Co.,* 65 Fed. Rep., 305.

II.    Is the business of the relief department *ultra vires* the corporation.

The question of the power of a railroad company to maintain and operate these relief departments, has been involved in several of the cases cited in the former part of this brief, but we have found no case in which the court has given this question any special consideration. The case at bar, however, is to be distinguished from all the cases in which this question has been before the courts, in this particular—in all of the cases heretofore considered by the courts, the controversy has been between the parties to the contract; in the case at bar the inquiry is by the state. The doctrine of *ultra vires* will be applied differently in a case like the one at bar than in a case between the parties to the contract. We have nowhere found a clearer statement of the rule in this regard than that given by Judge Williams, in *Gas & Fuel Co.* v. *Dairy Co.,* 60 Ohio St., 96.

If we have succeeded in establishing the proposition that the business of the relief department is an insurance business, there can be but little question that it is beyond the power of a railroad corporation. It is the policy of this state, that corporations can be formed for a single purpose only. The business of railroading and the business of insurance are entirely separate and distinct lines of business, and can not be engaged in by the same corporation. We have an extensive code of laws providing for the creation and regulation of railroad companies, and another code of laws providing for the creation and regulation of insurance companies. This court has always, in every case before it involving the powers of railroad or insurance corporations, restricted such corporations to the exercise of such powers as were granted them by statute. Thus, in the case of *Railroad* v. *Telegraph Co.,* 38 Ohio St., 31, it was held that a railroad company had not the power to engage in the business of telegraphy, farther than might be necessary or convenient to the management of the railroad and its business. *State* v. *Pioneer Live Stock Co.,* 38 Ohio St., 347.

If a company can not incorporate under the general incorporation statutes to do an insurance business not otherwise provided for by the statute, how can a company incorporated as a railroad corporation transact the business of insurance? An interesting discussion of the extent to which the statutes have seized upon the business of insurance, is found in *State* v. *Ackerman,* 51 Ohio St., 163

*Chas. E. Burr* and *T. M. Livesay,* for defendant in error.

First. The contract between the railroad company and the employe is not against public policy, does not lack mutuality, and is based upon a valid consideration.

To discuss the case at bar without full reference to the case of *Railway Co.* v. *Cox,* 55 Ohio St., 497, would be like discussing the relations of a corporation, to the state without mentioning *Dartmouth College* v. *Woodward,* 4 Wheat., 518. The Cox case involved the identical contract now under consideration and although that was an action between a member of the relief fund and the company and did not distinctly involve the question of *ullra vires* (which we will discuss later) yet, when the full scope of the decision and the broad views there expressed are considered, a narrow margin only of plaintiff's case is left for discussion. It is there expressly held that the contract is based on a valid consideration, does not lack mutuality and is not against public policy.

Second. The contracts in question and the execution of the same in the manner already shown do not (as the petition alleges) constitute "transacting the business of life and accident insurance" or either, within the legal meaning of those terms.

That the contract has insurance features no one denies, but that these features make the transaction the "business of life and accident insurance" is no more true than that a certain general resemblance makes a mule a horse. There are certain features about the relief department and the relief fund which show, we think, clearly, that their administration is not "transacting the business of insurance."

1. The administering of relief to the employes in the form shown is in no sense a *business.* It is but a single department, of which there are many, in the operation of a vast railroad system, just as there is a law department, and a real estate department. It can not, however, on this ground be charged with carrying on

the business of practicing law. It must often buy and sometimes sell, exchange, lease and rent real estate, but it can not be said to be in the real estate business. It manufactures gas for lighting its cars, but it is not therefore a gas company. Nor is it a manufacturing company because it builds engines and cars. Every railroad company finds it necessary in the conduct of its business of *railroading* to erect poles, string wires and transmit messages, but it has never been held that it is therefore a telegraph company or engaged in the "business of telegraphing." *Railroad Co.* v. *Telegraph Co.*, 38 Ohio St., 24.

2. In another marked aspect this work of relief is not insurance business. One of the leading definitions of insurance is the folowing: "Insurance is a contract by which the one party, in consideration of a price paid to him, *adequate to the risk,* becomes surety to the other, that he shall not suffer loss, prejudice, or damage by the happening of the perils specified to certain things which may be exposed to them." *Lucena* v. *Crawford*, 2 Bos. & Pul., N. R., 300.

The ordinary insurance company can only distribute what it has collected from the insured less the entire cost of administration. The voluntary relief department not only distributes to its members the entire amount collected from them, but adds the cost of administration, surgical attention and company relief. We think no *business* of insurance can be found organized upon such a basis.

3. The point now contended for is not without authority for its support. The only case in America sustaining the contention of the attorney-general is that of *Miller* v. *Railway Co.*, 65 Fed. Rep., 305. It is hardly worth while to discuss it since counsel for plaintiff admit that it "can not be regarded as good law." It has been distinctly disapproved by other courts. *Vickers* v. *Railway Co.*, 71 Fed. Rep., 139; *Otis* v. *Pennsylvania Co.*, 71 Fed. Rep., 136. The judgment in the Miller case was affirmed in the Circuit Court of Appeals, 76 Fed. Rep., 439.

On the question whether the business is that of insurance we call attention to 3 Elliott on Railroads, Sec. 1380; *Commonwealth* v. *Equitable Beneficial Ass'n*, 137 Pa. St., 412.

*Johnson* v. *Railroad*, 163 Pa. St., 127, in the construction of the relief association contract of the Philadelphia & Reading Railroad, is in all essential particulars like the contract in the case at bar.

*Donald* v. *Railway Co.,* 61 N. W. Rep., 971 (93 Ia., 284). The plan of organization and contract of the C., B. & Q. Ry. Co. in the above case was almost literally copied from that of the Pennsylvania Co. involved in the case at bar.

In the case of *Maine* v. *Railway Co.,* 109 Ia., 260, the same question was pointedly made and fully considered by the court both originally and upon a rehearing.

In the case of *Vickers* v. *Railway Co.,* 71 Fed. Rep., 139, the point was urged upon the court that in so far as the relief contract was concerned, the company was transacting the business of insurance contrary to the statutes of Illinois, but the court refused to so hold.

We call attention particularly to the case of *Beck* v. *Railway Co.,* 63 N. J. L., 232 (1899), as containing one of the latest and most thorough discussions of the questions now under consideration.

Aside from the question whether the business carried on is that of insurance, we call attention to the following cases in which the contract has been upheld, and in some of them with strong words of commendation. *Owens* v. *Railway Co.,* 6 O. F. D., 115; 35 Fed. Rep., 715; *State* v. *Railway Co.,* 36 Fed. Rep., 655; *Martin* v. *Railway Co.,* 41 Fed. Rep., 125; *Otis* v. *Penna. Railway Co.,* 71 Fed. Rep., 136; *Fuller* v. *Employes Assn.,* 67 Md., 433; *Ringle* v. *Railway Co.,* 164 Pa. St., 529; *Eckman* v. *Railway Co.,* 169 Ill., 312; *Graft* v. *Railway Co.,* 8 Atl. Rep., 206; *Spitze* v. *Railway Co.,* 75 Md., 162; *Railway Co.* v. *Curtis,* 51 Neb. 442; *Shaver* v. *Pennsylvania Co.,* 9 O. F. D., 221; 35 L. B., 106; *Railway Co.* v. *Bryant,* 6 Circ. Dec., 418; 9 C. C. R., 332; *Hamilton* v. *Railway Co.,* 118 Fed. Rep., 92. Several of the above cases are cited apparently with approval by the court in the case of *Railway Co.* v. *Cox,* 55 Ohio St., 497.

Third. There appears to be no legislative intent that such an association as that under consideration shall be hampered by any restriction under our insurance laws.

Section 3630, Revised Statutes, provides for the organization of a company or association to transact the business of life and accident insurance on the assessment plan for the relief of its members and the payment of stipulated sums to the families of members.

Section 3630*a* provides for the filing of an annual statement with

the superintendent of insurance, and subsequent sections provide other regulations.

Section 3631a, however, provides that the above sections and act shall not apply: (a) To any association of religious or secret societies; (b) Or to any class of mechanics, express, telegraph, or *railroad employes;* (c) Or ex-union soldiers formed for the mutual benefit of the members and their families; provided, that any such association which may desire to become subject to the provisions of Section 3630a, etc., may file with the superintendent of insurance notice in writing of such desire, and shall thereafter become subject to such provisions.

Again Sections 3631-11 *et seq.* provide for fraternal beneficiary associations and prescribe the conditions upon which their operations, whether organized in this or other states, may be carried on. But Section 3631-23 provides that the act shall not affect or apply to lodges of Masons, Knights of Pythias, Odd Fellows or similar orders that do not have as their principal object the issuance of insurance certificates of membership.

It is settled that the *business* of life, or life and accident insurance has been made by statute in this and probably in all the states a franchise. *State, ex rel,* v. *Ackerman,* 51 Ohio St., 163.

And if it were true as alleged in the petition that profits accrue from the operation of the relief department to the company, or even to the officers of the department, the defendant might perhaps be held to be exercising a franchise without complying with the law regulating such exercise. But at common law the making of insurance contracts was a matter of private right. That it has been made a franchise by legislative enactment is solely for the security and protection of the public. Spelling on Ex. Relief, Secs. 1807-1808.

All our insurance laws are based upon the protection of the public who are solicited to venture their money upon the credit of the company. But the public have nothing to do with the contract in question. They are not invited or permitted to share in its operations.

The question is not whether a railroad company may be permitted to engage in the business of life and accident insurance under the guise of benevolence or under any other guise, in addition to that of transporting passengers, freight and mail, but

whether its employes or such of them as choose to do so may not agree as part of their contract of employment that a portion of their wages may be retained by the company in a common fund out of which when disabled by accident, sickness or death, they, or their dependents are to be paid in lieu of the wages they are not able to earn.

Counsel seem to think that we will hesitate to call the scheme a part of the contract of employment. On the contrary, that it is a part of the contract of employment is as plain as daylight. It may be entered into when the employe first enters the service or afterwards, but whenever entered into it becomes a part of his contract of employment, defining how his wages are to be paid and to continue during his pleasure or to the end of his service. *Clemens* v. *Railway Co.,* 2 Q. B. Div., 482.

Fourth. The organization of the relief department and the administration of relief to employes through the relief fund is not *ultra vires* of the corporation. Morawetz, Secs. 320, 326.

It is recognized as of course that a railroad company can not engage in the business of insurance as a separate business, no matter how conveniently it might be done, or how profitable it might be to stockholders. But it is not the question and is not even an argument against its right to add insurance features in its contracts with its employes as auxiliary to and in furtherance of the successful execution of the main purpose of its creation. Especially must such auxiliary business be within the implied powers of a *quasi* public, or public service corporation when it adds to the safety, comfort and welfare of the public using its facilities.

The distinction is not difficult to draw and is pointed out by the Master of the Rolls in *Lyde* v. *Railway Co.,* 36 Beav., 16.

Railroad companies are impliedly authorized to provide refreshment and dining rooms, book-stalls, omnibusses, and otherwise secure the comfort and convenience of travelers. Morawetz, Secs. 368, 365; *Railway Co.* v. *Robards,* 60 Tex., 545; *Railway Co.* v. *Hooper,* 160 U. S., 514. The court discusses it some length the incidental powers of a railroad corporation, citing *inter alia Lyde* v. *Railway Co., supra,* and we ask the attention of the court to the case in full.

But nowhere is this subject more clearly treated, nor the rule as applicable to the case at bar more clearly stated, than by this court in *Gas & Fuel Co.* v. *Dairy Co.,* 60 Ohio St., 96.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and CREW, JJ., concur.

We assume that the relator commenced the action in the circuit court against the defendant railway company under favor of Section 6761, Revised Statutes, which is:

"A like action (*quo warranto*) may be brought against a corporation: (1) When it has offended against a provision of an act for its creation or renewal, or an act altering or amending such acts. (2) When it has forfeited its privileges and franchises by non-user. (3) When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges and franchises. (4) When it has *misused* a franchise, privilege or right conferred upon it by law, or when it claims or holds by contract or otherwise, or has exercised a franchise, privilege or right in the contravention of law."

Inasmuch as neither "the voluntary relief department," so called in the statement of the case, or its members, are parties to the suit, it would seem that the right to the remedy, is not under clause three of Section 6760, but under clause four of Section 6761, just quoted. And the prayer of the petition is:

"That the defendant be ousted from further continuing said business of insurance by means of its said relief department or in any other manner whatever, and asks such other relief as the nature of the case may require."

So, it is the complaint against the railway company, that under its charter and franchise as a railway company, it is conducting an insurance business in contravention of law, from which it should be ousted.

The answer denies that the defendant company transacts an insurance business, and in the circuit court certain facts were agreed upon in the trial and submission of the issue, some of which appear in the statement of the case.

But there are some additional facts contained in the agreement, which are necessary to be noticed in the determination of the important controversy, for it is not contended that the defendant openly, and in the usual manner, conducts insurance, and holds itself out to the public as an insurance company, and clearly such is not the fact in the case before us.

It is claimed by the relator, however, that the business done under the name of "the voluntary relief department" and in the

manner and by the means employed, amounts in substance to an insurance business, and which exceeds the charter powers of the company. A proper determination of this question, necessarily requires of us something more than a casual examination of the plans, structure and operation of the machinery by which the business in question is advanced and carried forward.

It no doubt is true that the organization of the so-called relief department, was in the first instance projected by the defendant and other railway companies, under the control and management of the Pennsylvania Co., and perhaps the plan may have emanated from the latter company, but this is not important in this case, for the record discloses that the defendant, having a relief department, such as is now under criticism, in November, 1890, by written contract, with a number of other railway companies, who had leased their respective lines to the Pennsylvania Co., associated themselves in the administration of their respective relief departments, and they are denominated "The Pennsylvania Lines west of Pittsburgh."

They adopted certain regulations, and it is cited that one of the objects of the association is to "secure uniformity and economy;" that to accomplish this they "associated themselves" for the purpose of a joint administration and regulation of said respective relief departments under one common organization to be known as "The voluntary relief department of the Pennsylvania Lines west of Pittsburgh."

It further appears that prior to November, 1890, the Pennsylvania Co. and the defendant company had "each respectively established a relief department for the benefit of its service and employes," and any other companies owning lines west of Pittsburgh which were being operated by the Pennsylvania Co., and which had adopted or would adopt similar relief departments, might associate with the former companies for the joint administration of the relief departments.

This brief history explains the character and form of the application for membership which is found in the record, and may give some color to the other features of the case. But the defendant, as did each of the other companies so associated, no doubt, continued its own separate relief department, with a subordinate, or separate advisory board, partly composed of men selected by

the contributing members and partly of men selected by the boards of directors of the constituent companies.

With this understanding of the general outlines of the origin, purpose and character of the relief department connected with the ·defendant, is it guilty of conducting an insurance business in contravention of law? This question suggests another: What is insurance business?

Various definitions have been given in brief of counsel, but we are content with the summary given in Bouvier's Law Dictionary . (Rawle's Revision), 1068: "A contract whereby, for an agreed premium, one party undertakes to compensate the other for loss on a specified subject by specified perils."

In another form, on the same page, it is said: "An insurance in relation to property is a contract whereby the insurer becomes bound, for a definite consideration, to indemnify the insured against loss or damage to a certain property named in the policy, by reason of certain perils to which it may be exposed."

Life and accident insurance is a contract whereby one party for a stipulated consideration, agrees to indemnify another against injuries by accident, or death from any cause not excepted in the contract.

In the parlance of the business of insurance, ordinarily the contract is called a policy; the consideration paid, the premium; and the events insured against are called "risks and perils." In case of injury or destruction of the property insured, or injury by accident, or liability for death, the liability is called a loss. Policies of this character may be preceded by an application for the same.

In the relief department practice under review, an application · is made the basis for membership, and the applicant must be an employe of the company to which the department is attached.

. It is required to be addressed as follows: "Pennsylvania Lines west of Pittsburgh, voluntary relief department. Application for membership in the relief fund. To the superintendent of the relief department."

The applicant then states his name and residence, and the name · of the company with which he is employed, the nature of the service engaged in, and that he has knowledge of and will be bound by the regulations of the relief department; and he constitutes the · proper agent of the railway company his agent to apply as a "vol-

untary contribution" to the relief fund, from his wages according to the rate of wages earned as graded in the regulations, for the purpose of securing the benefits provided for in the regulations for a member of the "relief fund," and "additional death benefits," stating his class, and name of the beneficiary in case of death.

The application contains the following stipulation, which will be discussed later in the opinion: "And I agree that the acceptance of benefits from the *relief fund* for injury or death, shall operate as a release of all claims for damages against said company, arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance."

There are other statements in the application not material to our inquiry, and a certificate is issued in pursuance of the terms of such application, if it be approved.

Section 31 of the regulations provides, that: "The word '*contribution*' wherever used in the regulations, or in the organization adopted in connection therewith, shall be held and construed to refer to such designated portion of the wages payable to an employe as he agrees to receive in the form of a right to benefits, in and through the *relief fund;* and the words 'contributors,' 'contributing employes'—and like words or phrases,—are descriptive of employes so agreeing." It is stated in the third regulation, that: "The object of this department is the establishment and management of a fund to be known as 'the relief fund,' for the payment of definite amounts to employes contributing to the fund ＊ ＊ ＊ when they are disabled by accident or sickness, and in the event of their death, to the relatives or other beneficiaries specified in the application of such employes." And by regulation four it is said, this fund is formed by voluntary contributions from employes; appropriations by the railroad company when necessary to make up a deficit, etc.

In regulation ten it is provided that: "The money received from the 'relief fund' shall be held by the company in trust for the relief department." Investments made of the fund, if any, shall be in the name of the company "in trust for the relief department."

The railway company is the depository of the fund so raised and is responsible for its management and safekeeping, and agrees

to make good any deficit in the fund, which becomes necessary to meet the proper demands on the relief department. This management is by the general manager of the company, and the advisory board, the latter being composed of persons mutually selected by members of the fund and the companies. Moreover, the railway company defrays all the expenses of the management, and the emergency services of the surgeons are rendered free by the company surgeons. Not a dollar of the fund ever belongs to the railway company, and it primarily is made up of a certain part of the wages of the employe retained for that purpose by his direction. The concern has no capital stock. The doors to membership in this fund are not open to the general public. While an employe is not required to become a member, none but employes can do so. While it is true that the railroad company is the depository of the fund, and stands good for its safekeeping and proper disbursement, it is, after all, but the custodian of a certain portion of wages, which the employe directs shall be retained to produce the benefit fund, from which he may draw in times of sickness or other disablement.

Is this an insurance business? It is not held out to be such. The objects stated in the organization and regulations are clearly otherwise. Neither the railway company nor its relief department advertises for, or in any other way solicits patronage. The members of the fund are volunteers.

The business transacted, while in part done by an officer of the company, aided by representatives of the members, is not mingled with the business and accounts of the railway company. It has no offices set apart for an insurance business, and has no agents to promote its interests. It does not undertake to insure or indemnify against either sickness, accident, or death. Such is not the language or spirit of the relation between the member and the fund. On the contrary, in case of sickness or injury, the members may draw from the relief fund what they mutually have created from a portion of their wages retained for that purpose, and the payment of the benefit, is not the payment of a loss on a risk named in a policy or other instrument of insurance.

This differs from an insurance business as commonly, and we might say, universally conducted. It is organized on an insurance basis; advertised as such. It needs and uses agents to represent it,

and it solicits from the general public. It has offices and current expenses, etc., and to protect the public, insurance laws have been enacted requiring publicity of its resources and methods of business, and in most cases periodical sworn statements of the condition and extent of the business being transacted. All this to prevent imposition upon the public, which might be misled by the representations of agents, or by published inducements for patronage. Another marked distinction between the relief department and insurance business is, that there is no profit to the railway company, and no profit, in the business or commercial sense, to the members of the fund, except such increase of the fund as may arise by way of interest on its investment, in case of a surplus. Those who organize or embark in insurance business have profit in view as a recompense for the industry, ability and capital invested, and it would be a strange insurance business that would omit this great incentive from its plans and purposes.

But it is said there is a resulting benefit to the railway company from the maintenance of the relief department, in the nature of profit, and that it consists in the stipulation in the application for membership, releases the company from all liability to him or his beneficiary, for damages on account of injury or death. We have hereinbefore quoted that stipulation, but it must be observed that the member or beneficiary, after the injury, and all its facts and circumstances are fully known, has the right to elect as between the acceptance of benefits and a claim against the company for damages. He is not compelled to accept benefits or nothing; and he waives no right to proceed against the company until he has accepted the benefits provided for him. It is true, that very many may accept the benefits, and release the company, but it is not every injury to the employe, and not every case of his death, from injury in the service, that furnishes a good cause of action against the company. Whatever benefit may accrue to the company, by the acceptance of benefits, cannot be called "*profit*," because it is but a remote or probable sequence to the membership of the employe. Indeed it seems that the liability of the railway company is enlarged by the relief department It vouches for the payment of benefits if accepted, and independent of any right of action against it, and leaves open the option to accept benefits or decline them and claim damages of the railway company.

If it is said that the company expects to realize from the relief department, by reason of more loyal service, and increased confidence of the employe in his employer, we may reply that loyalty of service and reasonable confidence are due the employer so long as he faithfully and honorably performs his contract and discharges all his duties to his employe. It seems difficult to figure out the relation that exists after and on account of this membership, the idea of profit to the company. If it breeds good will and contentment, the same is laudable, and we see nothing in the rules of the department that takes away or jeopardizes a single legal right of the employe. If sick, he may receive the aid. If injured in the service even through his own negligence, or in a service the risks and perils of which he assumed, he is entitled to his share of the fund. And if his injury is the fault of the company, he can elect to take the benefits provided or sue at law.

In one form or another the controversy we are dealing with has been before other courts of final resort, and the almost, if not altogether unanimous holding is, that managing and conducting such a relief department is not insurance business, but on the contrary, a beneficial provision merely, for employes, which the railway company might aid in promoting. We will note but a few of such cases.

*Commonwealth* v. *Equitable Beneficial Assn.,* 137 Pa. St., 412, is a case where there was a proceeding in *quo warranto* to require the defendant to show by what authority it claimed the right to make contracts of insurance and issue policies of insurance. The defendant answered the writ and denied making contracts of insurance, or issuing policies of insurance as alleged by the attorney-general. In the syllabus the Supreme Court of Pennsylvania say:

"1. A contract of insurance is purely a business adventure, not founded on any philanthropic or charitable privilege; and the design and purpose of an insurance company, and the dominant and characteristic feature of its contract, is the granting of an indemnity, or security against loss, for a stipulated consideration.

"2. But the design of what are known as benevolent societies, which are purely of a philanthropic, or benevolent character is, not to indemnify, or secure against loss, but from the contributions of members, to accumulate a fund to be used in their own aid, or relief, in the misfortunes of sickness, injury or death."

At the risk of being prolix we are tempted to adopt here a para-graph from the opinion of Justice Clark, on page 419 of that case:

"'To grant indemnity or security against loss, for a considera-tion, is not only the design and purpose of an insurance com-pany, but is also the dominant and characteristic feature of the contract of insurance. What is known as a beneficial association however, has a wholly different object and purpose in view. The great underlying purpose of the organization, is not to indemnify or secure against loss; its design is to accumulate a fund from the contributions of its members   *   *   *   to be used in their own aid and relief in the misfortunes of sickness, injury or death.   * *   *   The motives of the members may be to some extent, selfish, but the principle upon which they rest is founded in the considera-tions intended. Their benefits, by the rule of their organization, are payable to their own unfortunate, out of funds which the mem-bers have themselves contributed for the purpose, not as an indem-nity, or security against loss, but as a protective relief in case of sickness, or injury, or to provide the means of a decent burial in the event of death. Such societies have no capital stock. They yield no profit, and their contracts, although beneficial and pro-tective, altogether exclude the idea of insurance, or of indemnity, or of security against loss."

The above case was quoted from with approval in *Northwestern Masonic Aid Assn. of Chicago* v. *Jones et al*, 154 Pa. St., 99.

More directly in point is *Beck* v. *The Pennsylvania R. R. Co.*, 63 N. J. Law, 232.

The facts in that case show that it involved a relief depart-ment, organized precisely like the one under consideration. The opinion was by a unanimous court, and it held that the transaction was not an insurance contract within the meaning of insurance law. It also held that it was neither *ultra vires,* nor against pub-lic policy.

On page 241 of the opinion, Magie, Chief Justice, speaking of the relief department, says: "It is limited to such of the employes of the company as voluntarily apply for admission to the fund and are admitted. They agree with each other and the company to contribute a portion of their wages to create a fund out of which they shall be paid certain sums in case of sickness or injury, and out of which in case of death, certain sums shall be paid to the bene-ficiaries or next of kin. The sum so paid may save from want, but does not increase the estate of the employe. * * * I can perceive no reason why the establishment of such a fund and the agree-

ment of those who contribute to it as to its distribution can be held to fall within the regulations of the insurance laws. Such association creates its own fund by voluntary action, and distributes it by an agreed-upon plan, and the contract between them is not of insurance but of beneficial relief. As they have neither sought nor obtained corporate powers for their purpose, they are not amenable to prohibitions against the use of corporate powers for that purpose, if any such exists. * * * "

The question was also before the Supreme Court of Iowa in two different cases. In *Donald* v. *C. B. & Q. Ry. Co.,* 93 [a. 284, the character of a similar relief department was under review. One proposition of the syllabus is: "An association organized by a railroad company for its employes, which agrees to pay stated sums to members or their beneficiaries in case a member is killed or injured in the employment, the company paying operating expenses nad making good deficiencies after assessment, is not an insurance company, but a beneficiary society."

It was also decided in that case that the contract involved was not against public policy, and the reasons for the conclusions, we think are unassailable.

Again, in *Maine* v. *The C., B. & Q. R. R. Co.,* 109 Ia., 260, the same holding was made. It is there decided also that a railroad company has implied power to make such contract.

The foregoing cases cite many others to support them, but we have no further room for their consideration. The cases form a uniform current of judicial opinion. We have not been cited to a single case holding a contrary view, and our research has not been awarded with one. We think the tide of judicial opinion is irressistible.

There is another reflection in this case. We have, to a reasonable extent, examined our statutes upon the subject of insurance and insurance companies. They provide carefully for their charter and organization; and for the deposit of the required amount of money or securities before proceeding to business. Certain sworn statements, and annual reports are to be filed with the insurance department, etc.; but we find no section that makes a call upon such an association as this relief department. The Legislature thus far has not recognized its business as that of insurance. On the contrary there seems to be an express exception in favor of such associations.

Section 3631a, Revised Statutes, provides: "This act (viz. Sections 3630a to 3631) shall not apply to any association of religious or secret societies, or to any class of mechanics, express, telegraph or railroad employes, or ex-union soldiers, formed for the mutual benefit of the members thereof, and their families or blood relatives, exclusively, or for purely charitable purposes;" and then provides how such associations may incorporate.

See also Section 3631-23, Revised Statutes, where there is an exception of similar associations from the operation of insurance laws. We think it apparent from these and other sections that it has been the legislative intent to permit some of the plain and useful things of every day life to be attended to without the wearing of a corporate charter.

It is also urged in argument for the relator, that the acts of the railroad company in promoting and managing the relief department, are *ultra vires,* and therefore the defendant should be ousted from performing them.

Some of the cases we have cited deny this proposition, and there are many others of the same tenor and import. For the purposes of this branch of the case, we need seek no further than a decision of this court, in *Gas & Fuel Co.* v. *Dairy Co.,* 60 Ohio St., 96. The first section of the syllabus expressed the opinion of the entire court, and it declares: "The implied powers which a corporation has in order to carry into effect those expressly granted, and accomplish the purpose of its creation, are not limited to such as are indispensable for these purposes, but comprise all that are membership, that the acceptance of benefits under the certificate of necessary in the sense of appropriate, convenient and suitable, including the right of reasonable choice of means to be employed." The second section of the syllabus lacked the support of but one member of the court, and it declares: "Acts of a corporation, which, if standing alone, or engaged in as a business, would be beyond its implied powers, are not necessarily *ultra vires* when they are incidental to, or form part of an entire transaction that in its general scope is within the corporate purpose. The validity of such a transaction is to be determined from its general character considered as a whole, rather than by segregation into individual parts, and each regarded as distinct from the others."

The most of the work of an employe of a railroad company is

hazardous, and frequent injuries are sustained requiring surgical and medical attention. The company has its surgeons along its lines to respond in case of injury, and the more efficient the organization of this benefit branch of the service, the better for both the master and servant. And yet the company should not be charged with conducting a medical or surgical school. If it should establish hospitals for its injured employes and equip them with everything conducing to comfort and speedy recovery, including surgical attention, its acts should not be regarded as *ultra vires*, in that it conducts hospitals.

It may, for the purposes of careful and successful management of its business as a railroad, establish telegraph and telephone facilities and install a proper number of competent operators, and yet it may not be charged with carrying on a telegraph and telephone business. It may establish hotels and eating rooms along its lines and not be in the hotel business. All these things are incidental to the main occupation and are within the implied powers conferred.

Again, it is said that the scheme adopted and the conditions of membership meet the condemnation of public policy. Some of the cases already cited consider this question also. There are very many others, a few of which we cite: *Otis* v. *Pennsylvania Co.*, 71 Fed. Rep., 136; *P., C., C. & St. L. Ry. Co.* v. *Moore, Admr.*, 152 Ind., 345; *Johnson* v. *Philadelphia & Reading R. R. Co.*, 163 Pa. St., 127; *Beck* v. *Pennsylvania Co., supra; Hamilton* v. *St. L., K. & N. W. R. R. Co.*, 118 Fed. Rep., 92.

These cases cited many others to the same effect, and as on the first branch of this case, the authorities present a solid front.

We need not pursue this discussion further than to cite a leading case decided by this court: *P., C., C. & St. L. Ry. Co.* v. *Cox*, 55 Ohio St., 497. That case involved the same relief department developed in the present inquiry, and the certificate of membership is precisely like the form now in use by the defendant, and this court held expressly that the contract between the members and the company is not contrary to public policy. We are still satisfied with that decision, and believe it to be entirely sound.

The grounds for ousting the defendant have not been sustained. The circuit court correctly so held and its judgment is affirmed.

*Judgment affirmed.*