PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. MOORE, ADM.

[No. 17,905.   Filed March 29, 1899.]

APPEAL AND ERROR.—*Harmless Error.*—Overruling a demurrer to a bad paragraph of complaint is not available error on appeal, where it clearly appears from the record that the judgment rests upon a good paragraph.   *p. 348.*

SAME.—*Pleading.— When Cannot Be Aided by Verdict.—* Where a pleading has been tested by demurrer it cannot be aided by the findings of the special verdict, but must stand or fall by its own averments.   *p. 348.*

PLEADING.—*Complaint.—Negligence.—Sufficiency of Averments as to Place of Injury.—*Averments in a pleading in an action against a railroad company for the death of an employe, caused by the negligence of defendant in operating trains within the corporate limits of a city, in a manner prohibited by ordinance, that defendant maintained yards and a telegraph office in such city; that deceased was employed as operator in said office; that it was his duty to receive and deliver orders to train crews passing said office, and in delivering an order he was struck by an engine and killed, sufficiently show that the place of the accident was within the corporate limits of such city.   *p. 349.*

MASTER AND SERVANT.—*Negligence.—Railroads.—*An employe of a railroad company has a right to believe, and rely upon the belief, that the company will obey a city ordinance regulating the speed of trains and requiring all backing trains, or reversed engines, with tenders in front, to carry a light in front at night, and to sound the whistle and ring the bell.   *pp. 349, 350.*

SAME.—*Negligence.—Railroads. — Co-Employes. —* In the trial of an action against a railroad company for damages on account of the death of an employe caused by the alleged negligence of the defendant, the jury have the right, under section 7083 Burns 1894, to impute the disregard of defendant's engineer of a city ordinance regulating the speed of trains, and the manner of backing trains, as negligence of defendant.   *p. 350.*

SAME.—*Railroads.—Negligence.—City Ordinance Regulating Manner of Running Trains.—*The power of a city to pass an ordinance regulating the manner of running trains in the city limits is con·

| 152 | 345 |
| 152 | 416 |
| 152 | 417 |
| 152 | 421 |

| 152 | 345 |
| 153 | 327 |

| 152 | 345 |
| f154 | 155 |
| f156 | 368 |
| 156 | 369 |
| 156 | 371 |
| 156 | 372 |
| 156 | 375 |

| 152 | 345 |
| 157 | 223 |
| 157 | 227 |

| 152 | 345 |
| 158 | 205 |

| 152 | 345 |
| e160 | 365 |
| 160 | 373 |

| 152 | 345 |
| 161 | 109 |
| e161 | 679 |

| 152 | 345 |
| 163 | 256 |

| 152 | 345 |
| f168 | 279 |
| 168 | 282 |
| f168 | 481 |

| 152 | 345 |
| 169 | 10 |

ferred as a police power, and the fact that a person is in the service of a railroad company affected by such ordinance presents no reason for depriving him of its protection.   *p. 350.*

RAILROADS.—*Master and Servant.—Employers' Liability Act.—Contracts.—Release.—Voluntary Relief Association.—Election of Remedies.*—A contract voluntarily entered into by an employe with a relief department of the railroad company by which he was employed, agreeing that the acceptance of benefits from such relief department for injury or death should operate as a release of all claims for damages against the railroad company arising from such injury or death, is not a release within the meaning of section 7087 Burns 1894, declaring the contract void which exonerates a railroad company from a future liability to an employe for injuries sustained, as such contract is nothing more than a contract for a choice between two sources of compensation. The case of *Pittsburgh, etc., R. Co.* v. *Montgomery, ante,* 1, in so far as it conflicts with the foregoing doctrine is disapproved.   *pp. 351-357.*

SAME.—*Master and Servant.—Voluntary Relief Association.—Contracts.—Release.*—Where a railroad employe entered into a contract with the relief department of the company to the effect that the acceptance of benefits from such department for injury or death should operate as a release of all claims against the railroad company arising from such injury or death, the acceptance of benefits from the relief department by his widow, who was the sole beneficiary named in the contract, will not bar a recovery for the wrongful death of decedent for the use of his child.   *pp. 357, 358.*

From the Miami Circuit Court.   *Reversed.*

*N. O. Ross* and *G. E. Ross,* for appellant.

*McConnell & Jenkines, Nelson & Myers, Charles A. Cole* and *A. N. Mahoney,* for appellee.

HADLEY, J.—Appellee brought this action to recover damages for the death of her husband, alleged to have been caused by the negligence of appellant. The complaint is in, three paragraphs, to each of which a demurrer was overruled. The answer was in three paragraphs, a demurer to the second of which was sustained. The reply to the third paragraph of answer was in three paragraphs, and a demurrer to the third paragraph thereof was overruled. The cause thus at issue was tried by the jury, which returned a special verdict assessing the plaintiff's damages at $8,000. A judgment for

$8,000 was rendered in favor of the appellee. The action of the court, upon the demurrers, and in overruling appellant's motion for a new trial, for a *venire de novo,* for judgment on the special verdict, in arrest of judgment, and to modify the judgment is separately assigned as error.

The principal facts covered by the complaint are as follows: On the 5th day of July, 1893, plaintiff's decedent, Henry E. Moore, entered the employ of appellant as night operator, at its yard office in the city of Logansport, where, and in which capacity, he continued until February 16, 1894, when he received injuries resulting in his death; that on the fatal night, while engaged in discharging the duties imposed by his said employment, about 8 :45 p. m., he had received by wire, and under directions of appellant had delivered an order to the conductor and engineer of freight train No. 77, while the same was running west through the yards at a rate of four or five miles an hour; and when decedent turned from delivering said message to return to his post of duty, and while in the line of duty, and without fault or negligence on his part, one of appellant's locomotive engineers, in the employ of appellant and in charge of appellant's locomotive, drawing appellant's wreck train upon appellant's main track, so carelessly and negligently ran said locomotive and wreck train eastward through said yards, with the engine reversed, the tender in front, and so carelessly and negligently managed and operated said locomotive and train, without giving any warning, or displaying any light, or ringing a bell or sounding a whistle, and at a speed of twenty miles an hour, as to, and did, without warning and without notice to plaintiff's decedent, negligently run upon and over the body of plaintiff's decedent, causing his death.

In the second paragraph it is further averred that Logansport is a city of 16,000 inhabitants, and, at the time of the injury to plaintiff's decedent, said city had ordinances in force, requiring trains to be run through said city, after sunset, at a speed not exceeding six miles per hour, and that

trains and locomotives, being run backward, or with tender in front, should carry signal lights in front, and should be announced by ringing the bell and sounding the whistle, and that said engineer, so in the employ of appellant, and so in charge of appellant's said locomotive and wreck train, negligently ran said locomotive and tender backward at a speed of twenty miles per hour, within the limits of said town, without ringing the bell or sounding the whistle, or displaying any signal light in front of said tender, in violation of said city ordinance.

Appellee concedes that the complaint is grounded upon the first branch of the fourth clause of what is known as the Employers' Liability Act, section 7083 Burns 1894, which reads as follows: "Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any   *   *   *   locomotive engine or train upon a railway."

Appellant's learned counsel first assail the complaint for failure to disclose in either paragraph some duty owing by appellant to the deceased that had not been performed, their contention being that all the perils pleaded were obvious and ordinary risks assumed by the deceased.

When it clearly appears from the record that the judgment rests upon a good paragraph of complaint, the overruling of a demurrer to a bad paragraph is not available error on appeal. Therefore, without considering the sufficiency of the first paragraph of complaint, which is urged upon our attention, we pass to the second, which sets out the facts in greater.detail, and to which the special verdict seems to have been especially directed.

Appellee insists that, if any fundamental fact is insufficiently alleged, we may read into the complaint from the findings of the jury. This is not the law. When a pleading is tested by demurrer, it must stand or fall by its own averments. It can find neither weakness nor strength from other parts of the record. *American Ins. Co.* v. *Replogle*, 114 Ind.

1-7; *Cole* v. *Gray*, 139 Ind. 396-399; *Runner* v. *Scott*, 150 Ind. 441.

There is no longer any ground for contention over the rule that an employe assumes all the obvious and ordinary perils incident to his employment, and we find nothing in the statute, relied upon by appellee, to lessen the degree of diligence and responsibility required of the servant for his own protection.

Looking then to the facts pleaded in the second paragraph of complaint, for unperformed duty of appellant to the deceased, it is first insisted that it does not sufficiently show that the accident occurred within the corporate limits of the city of Logansport. It is averred that appellant maintained yards, and a telegraph office therein, "at" the city of Logansport; that the deceased was employed as operator in said telegraph office; that it was his duty to receive and deliver orders to train crews passing said office; and, in passing from said office to deliver an order to train number 77, westward bound on the main track, he was required to pass over a number of other tracks, etc., and was killed by the negligent act of the engineer, etc.; that the city of Logansport is an incorporated city of 16,000 inhabitants, and had in force on the fatal night an ordinance, etc.

In criminal pleading, in laying the venue, an approved form is to charge that the crime was committed "at Cass county," and the above averments, we think, sufficiently show that the place of injury was within the corporate limits of the city of Logansport.

While we apply the rule that a servant must look out for his own safety, and heed, at his peril, all open and ordinary dangers, we must also give force to the correlative rule, equally well established, that the servant himself observing due care, has a right to believe and to rely upon his belief, that the master has done his duty in the promotion of safety, and, in this instance, the deceased had a right to believe that appellant would obey the city ordinance which forbade the

running of trains through the city at a greater rate of speed than six miles an hour, and that required all backing trains, or reversed engines with tenders in front, after night, to carry a light in front, and to sound the whistle and ring the bell. A disregard of the ordinance, under section 7083 Burns 1894, will extend to the engineer in the employ of appellant and in charge and management of its locomotive and train; and if said ordinance was disobeyed by said engineer, as averred, the jury would have the right to impute such disobedience as negligence. *Swindell* v. *State, ex. rel.,* 143 Ind. 153-168, 35 L. R. A. 50; *Pennsylvania Co.* v. *Stegemeier,* 118 Ind. 305. It will not do to say, as appellant contends, that the deceased, being in the service of the company, and familiar with the needs of the service, in running trains backward and forward through the yards, and sometimes at a great rate of speed, was not entitled to the protection afforded by the ordinance. The power of a city to pass such an ordinance is conferred as a police power for the protection of the public, and all the public; and because the deceased happened to be in the service of the company, within the inhibited territory, presents no reason for depriving him of its protection. *East St. Louis, etc., R. Co.* v. *Eggmann,* 170 Ill. 538, 9 Am. & Eng. R. Cas. (N. S.) 438, 48 N. E. 981; *Illinois, etc., Co.* v. *Gilbert,* 157 Ill. 354, 41 N. E. 724; *Bluedorn* v. *Missouri, etc., R. Co.,* 108 Mo. 439, 18 S. W. 1103, 32 Am. St. 615. It follows, therefore, that the jury had the right to find, if the evidence warranted, that obedience to the city ordinances was a duty owing by appellant to the deceased, and its violation was not an assumed risk, but negligence of appellant.

The second paragraph of the complaint is good. The special verdict finds that Logansport is an incorporated city of 18,000 inhabitants; that the deceased was injured within the corporate limits of the city; that at the time of the accident the city had in force ordinances forbidding the running of trains through the city at a greater rate of speed than six

miles an hour; that all engines running backward, with tender in front, after sunset, should display a bright light in front, and ring the bell continuously, while passing through the city; that these ordinances were being violated at the time of the injury. And in other respects the record affirmatively shows that the judgment rests upon the second paragraph of the complaint. We will, therefore, not consider the sufficiency of the first and third paragraphs of complaint.

The next question arises upon the sustaining of the demurrer to the second paragraph of the answer. This answer is pleaded to the whole complaint. It counts upon a contract of membership held by the deceased in an organization known as the "Voluntary Relief Department of the Pennsylvania Lines West of Pittsburgh," of which appellant was one; "that said department and its funds were managed by said lines without expense to the fund, and that they guaranteed the payment of all its obligations and made up all deficiencies in the fund to meet the payment of all benefits due its members; that said relief department had a set of rules and regulations by which it and its members were governed, and to which all persons assented, and agreed to be bound by, when they became members thereof, a copy of which was filed with and made a part of said answer; that the decedent on the 7th day of October, 1893, made application and became a member on the terms of the regulations by which said department was operated, and continued such member until his death; that his application, made over his own signature, contained this express stipulation and agreement, to wit: 'And I agree that the acceptance of benefits from the said relief fund for injury or death, shall operate as a release of all claims for damages against said company arising from such injury or death, which could be made by, or through me, and that I or my legal representatives, will execute such further instrument as may be necessary formally to evidence such acquittance.' " The book of regulations (a part of the contract) contained the following further provision, to wit:

"Should a member, or his legal representatives, bring suit against either of the companies now associated in administering the relief department, or that may hereafter be associated, for damages on account of injury or death of such member, payment of benefits from the relief fund on account of the same shall not be made until such suit is discontinued. If prosecuted to judgment or compromise, any payment of judgment or amount in compromise shall preclude any claim upon the relief fund for such injury or death."

The answer further alleges that the appellee, Anna B. Moore, his then wife, was made his beneficiary in said fund, and, in event of his death, should receive the death benefit therein provided for, which was $500, and that after his death she did receive from said fund, as such death benefit, said sum of $500, and executed and delivered to the appellant her instrument in writing releasing it from all further liability. The questions arise, did the acceptance by the plaintiff of the death benefit from said relief department release her claim against appellant for the wrongful death of her husband, or does her act come under the protecting provisions of section 5, Acts 1893, chapter 130, p. 294, section 7087 Burns 1894? The language of the statute is: "All contracts made by railroads * * * with their employes, or rules or regulations adopted by any corporation releasing or relieving it from liability to any employe having a right of action under the provisions of this act are hereby declared null and void."

Appellant insists that the contract set out in said second answer does not come within the provisions of the statute, while the contrary is maintained by the appellee. It will be noted that the inhibition of the statute is against the making of any contract exonerating a railroad company from a future liability to an employe. The statute attempts only to forbid such contracts as release the company from liability to an action under the provisions of the act, and the act provides, and seeks to regulate, no right of action except such

as spring from the negligence of the company or its employes. The only purpose of the statute, therefore, is to prohibit the making of contracts relieving a railroad from liability for future negligence of itself and certain of its employes. Is the contract pleaded such a one? It shows: That a number of railroads constitute the Relief Department of the Pennsylvania Lines West of Pittsburgh, of which appellant was one; that the associated roads assume control and administration of the department without cost to the fund; that they contribute largely to the fund; that they guarantee that the benefits stipulated for with employes shall be paid in full; that membership therein is voluntary; that the employe is entitled to his benefits, if disabled from any cause, from sickness, from accident, from his own fault as well as from the fault of the company. If disabled without fault of the company, the living or death benefit may be drawn from the fund without question. If by the fault of the company , he may, after injury, elect whether he will accept the benefits from the fund, or pursue his remedy at law against the company. And that, when he signs the contract, the only obligation assumed is that if injured by the fault of the company, he will not seek double compensation, by pursuing both the relief fund and the company. It further shows, in effect, that when disability comes, and all the facts and conditions are known to him, he is at perfect liberty then to choose between the relief fund and the treasury of the company—whether he will accept the sure and immediate benefits from the fund, or take his chances in the courts against the company, and that an adoption of one course shall be held to be an abandonment of the other. This is the essence of the contract pleaded. It bears no semblance to an absolute contract for the release of the company from liability, under the provisions of the statute.

The question here involved is not a new one to the courts. It has long been the law that a railroad shall not contract

against liability for its future negligence, as being against public policy, in that such a right would induce carelessness for the safety of employes; and similar contracts with relief associations have often been before the courts of the country for construction.

In *Johnson* v. *Philadelphia, etc., R. Co.*, 163 Pa. St. 127, 29 Atl. 854, the court, having under review a contract in all material respects like the one here, says: "But even in cases of injury through the company's negligence there is no waiver of any right of action that the person injured may thereafter be entitled to. It is not the signing of the contract but the acceptance of benefits after the accident that constitutes the release. The injured party therefore is not stipulating for the future, but settling for the past; he is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby."

In the case of *Ringle* v. *Pennsylvania R. Co.*, 164 Pa. St. 529, 30 Atl. 492, 44 Am. St. 628, in construing a contract, the same in terms as this one, the court says: "In the present case there is an additional agreement that the plaintiff shall 'execute such further instrument as may be neecssary formally to evidence such acquittance,' and it is argued that no such release has been executed by plaintiff. But it is not necessary that it should be. The acceptance of benefits is the substance of the release, and the agreement for a further instrument is by its express terms a mere formality for convenience of evidence."

In the case of *Otis* v. *Pennsylvania Co.*, 71 Fed. 136, the contract considered was identical with the one pleaded in this answer, and concerning it Baker, J., says: "As a general proposition, it is unquestionably true that a railroad company cannot relieve itself from responsibility to an employe for an injury resulting from its own negligence by any contract entered into for that purpose before the happening of the injury, and, if the contract under consideration is of that char-

acter, it must be held to be invalid.  But upon a careful examination it will be seen that it contains no stipulation that the plaintiff should not be at liberty to bring an action for damages in case he sustained an injury through the negligence of the defendant.  He still had as perfect a right to sue for his injury as though the contract had never been entered into.  Before the contract was entered into, his right of action for an injury resulting from the defendant's negligence was limited to a suit against it for the recovery of damages therefor.  By the contract he was given an election either to receive the benefits stipulated for, or to waive his right to the benefits, and pursue his remedy at law.  He voluntarily agreed that, when an injury happened to him, he would then determine whether he would accept the benefits secured by the contract, or waive them and retain his right of action for damages."

In *Shaver* v. *Pennsylvania Co.*, 71 Fed. 931, Ricks, J., reached the same conclusion from the consideration of a similar contract.

Again in *Pittsburgh, etc., R. Co.* v. *Cox*, 55 Ohio St. 497, 45 N. E. 641, 35 L. R. A. 507, the supreme court of Ohio expressed its view of a similar contract in the following words: "This claim arises, we think, from a misconception of the contract; in assuming that, by the contract, the employe releases some future right of action against the company. On a previous page we have undertaken to show that such is not the case; that there is no waiver of any cause of action which the employe may become entitled to, and that it is not the signing of the contract, but the acceptance of benefits after the accident, that constitutes the release.  When that occurs he is not stipulating for the future; he is but settling for the past.  He accepts compensation for injury already received." The same view is held by the supreme court of Iowa, announced in *Donald* v. *Chicago, etc., R. Co.*, 93 Iowa 284, 61 N. W. 971, 33 L. R. A. 492, and by the supreme court of Maryland in *Fuller* v. *Baltimore, etc., Assn.*, 67 Md. 433, 10

Atl. 237, and by the supreme court of Nebraska in *Chicago,
etc., R. Co.* v. *Curtis,* 51 Neb. 442, 71 N. W. 42; and to the
same effect is the case of *Maine* v. *Chicago, etc., R. Co.*
(Iowa), 70 N. W. 630, and that of *Lease* v. *Pennsylvania
Co.,* 10 Ind. App. 47.

The contract forbidden by the statute is one relieving the
company from liability for the future negligence of itself and
employes. The contract pleaded does not provide that the
company shall be relieved from liability. It expressly recog-
nizes that enforceable liability may arise, and only stipulates
that, if the employe shall prosecute a suit against the com-
pany to final judgment, he shall thereby forfeit his right to
the relief fund, and, if he accepts compensation from the re-
lief fund, he shall thereby forfeit his right of action against
the company. It is nothing more or less than a contract for a
choice between sources of compensation, where but a single
one existed, and it is the final choice—the acceptance of one
against the other—that gives validity to the transaction.

But appellee contends that some of the cases cited above
arose in states having no similar statute, and that the ques-
tion of the railroad's contractual relief from liability was
propounded as being against public policy, and not as in vio-
lation of a statute, and hence should not be accepted as au-
thority. The answer to this is that the statute also rests upon
public impolicy, or it has nothing whatever to stand upon.

The right to contract upon subjects of themselves lawful,
by persons *sui juris,* is beyond legislative control, so long as
the right is exercised without injury to the public. The right
to contract is inherent, and inseparably connected with the
right to own and control property, and "is a primary preroga-
tive of freedom." 2 Whart. Cont., section 1061. There-
fore, in construing the act in question, it must be assumed
that the legislature intended to prohibit only such contracts
as injuriously affected the public; and can it be said that a
contract providing that in the future, when an injury may
be suffered, the injured party shall then be free to choose

which of two remedies will be most useful to him and most to be preferred, is against public policy? We do not see why, and are constrained to hold that the contract pleaded in the second answer is not within the inhibition of section 7087 Burns 1894, and that the same may be pleaded as a defense.

We are mindful that this court, in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, ante,* 1, held a view of this question at variance with the opinion herein expressed, and which, after a more thorough examination of the decided cases, we find to be in conflict with the very decided weight of authority. Indeed, the cases seem now to be in substantial accord.

The case of *Miller* v. *Chicago, etc., R. Co.,* 65 Fed. 305, the only case relied upon as authority upon this question, was subsequently appealed to the United States Circuit Court of Appeals, Eighth District, and the doctrine of the lower court inferentially disapproved, by the court announcing, in substance, that the authorities were all the other way, though the question here was not decided, as not being necessary to a disposition of the case. *Chicago, etc., R. Co.* v. *Miller,* 22 C. C. A. 264. So far as the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, supra,* is in conflict with the opinion herein announced, the same is disapproved.

As before stated, the second answer goes to the whole complaint. The plaintiff, as administratrix, sues for the use of herself as widow, and for the infant child of the decedent, under section 285 Burns 1894, section 284 Horner 1897. Under this statute, if the intestate had a cause of action against appellant for his injuries, death ensuing therefrom, a right of action accrued to his personal representative for the use of his next of kin.

Whether the right of the administratrix was but a continuation of the intestate's right to sue, as contended by appellant, or whether it was a newly created right, as our cases hold, is unimportant here. However it may be, the right exists only by virtue of the statute, and exists, not for the

benefit of the intestate's estate, but as a source of compensation to those who by the death become the parties injured by the wrongful act of the defendant.  *Hilliker* v. *Citizens St. R. Co., ante,* 86.

The deceased at the time of his death had not elected whether he would accept compensation from the relief fund or seek his damages by action at law against the appellant. Subsequent to his death the plaintiff, as widow, and who was named in the contract as the sole beneficiary of the death benefit, accepted the stipulated amount, $500, in full satisfaction, and executed to appellant a release from further liability.  Appellant contends that, since the widow was the sole beneficiary named in the contract with the relief department, her acceptance of the full sum extinguished all further claim against the company.  We cannot assent to this proposition. Before death came to Moore, he had a cause of action against appellant that he had not released.  Upon his death the law conferred a right of action upon his representative for the use of his next of kin,—for the use of his child as well as for the use of his widow; and no act of the latter, without the lawful consent of the child, will deprive the child of its benefit.  The widow could only release what she was entitled to.  *Chicago, etc., R. Co.* v. *Wymore,* 40 Neb. 645, 58 N. W. 1120.

The answer avers that after the death of her husband, and after she had become a beneficiary in a right of action against the company, without fraud she agreed with appellant, and accepted the $500 death benefit in full satisfaction of her claim growing out of the death of her husband; and there is perceived no sufficient reason why she should not be bound by it.  But her release in no way affected the rights of the child, and for the use of the child's estate, in her representative capacity, the plaintiff has the right to maintain this action.  It follows that as the second answer was pleaded to the whole complaint, and is good only as to a part, the demurrer thereto was properly sustained.

The third paragraph of answer was partial and was ad-

dressed only to so much of the complaint as sought a recovery for the use of the widow. It averred that after the death of her husband, in consideration of $500, she fully released the appellant.

The plaintiff replied to the third answer in three paragraphs. In the third paragraph she set up substantially the same facts and exhibits as were set out in the second paragraph of answer, and averred that the $500 was received by her under and in pursuance of her deceased husband's contract with said relief department, and not otherwise, and that said contract was invalid and void.

To this paragraph of reply a demurrer was overruled, which forms the basis for appellant's fifth assignment of error. The question presented by this reply is the same as that considered at length as arising upon the second paragraph of answer, and, for the reasons there given, we hold that the court erred in overruling the demurrer thereto. For this error the cause must be reversed.

Judgment reversed and cause remanded, with instructions to sustain appellant's demurrer to the third paragraph of reply to third paragraph of answer, and for further proceedings in accordance with this opinion.