## DAY v. ATLANTIC COAST LINE R. CO.

(Circuit Court of Appeals, Fourth Circuit. April 16, 1910.)

No. 934.

1. MASTER AND SERVANT (§ 179*)—INJURIES TO SERVANT—FELLOW-SERVANT LAW—ABOLITION—CONSTITUTIONALITY.

A state constitutional provision abolishing the fellow-servant rule with reference to railroad employés is not in conflict with the federal Constitution or its amendments.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 354–358; Dec. Dig. § 179.*]

2. MASTER AND SERVANT (§ 100*)—INJURIES TO SERVANT—RELIEF DEPARTMENT CONTRACT.

A railroad relief department contract, by which the employé was merely put to his election, on receiving an injury, between receiving benefits or suing the railroad company for damages, was not in violation of Const. Va. § 162 (Code 1904, p. cclix), abolishing the fellow-servant rule with reference to railroads, and declaring that every contract or agreement, express or implied, made by an employé to waive the benefits of the section, should be invalid.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 166; Dec. Dig. § 100.*]

3. COURTS (§ 334*)—FEDERAL COURTS—STATE PRACTICE.

On a writ of error in an action at law, the Circuit Court is governed on questions of practice by rules prevailing in the courts of the state in which the case was tried.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 899; Dec. Dig. § 334.*]

4. MASTER AND SERVANT (§ 100*)—INJURIES TO SERVANT—RELIEF DEPARTMENT CONTRACT—PUBLIC POLICY.

Where a railroad employé became a member of its relief department pursuant to a voluntary application in writing, and was fully advised at the time of all the departmental regulations, a provision thereof that, in case of injury, he was required to elect between his right to sue for damages or to receive benefits, was not invalid as contrary to public policy.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 166–170; Dec. Dig. § 100.*

Acceptance of benefits from relief association or insurance procured by master as affecting master's liability for injuries to servant, see note to Atlantic Coast Line R. Co. v. Dunning, 94 C. C. A. 139.]

In Error to the Circuit Court of the United States for the Eastern District of Virginia, at Richmond.

Action by W. T. Day against the Atlantic Coast Line Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Plaintiff in error, hereinafter called the "plaintiff," sued the defendant in error, hereinafter called the "defendant," for the recovery of damages alleged to have been sustained by a personal injury caused by the negligence of defendant. In his declaration he avers: That on and prior to August 2, 1907, he was in the employment of defendant as an engineman, operating and running a locomotive engine drawing a train of freight cars over defendant's road between Rocky Mount, in the state of North Carolina, and Pinners Point, in the state of Virginia. That on the 3d day of August, 1907, the throttle valve on the engine was, and had been for several days, out of repair. "That

he had notified defendant's employé at Rocky Mount, whose duty it was to repair same. That, notwithstanding such notice, they negligently and carelessly failed to repair said valve and permitted it to remain out of repair." That by reason of the condition of said valve the steam "came into the dome of the engine." The declaration describes the construction of the engine, the office performed by the several parts in its operation, and the manner of operating it. He states that it is necessary, in operating the engine, that an engineman and fireman shall be upon it; the engineman being the superior in authority. He sets out a rule of the defendant company by which the engineman is directed not to leave his engine during a trip, except in case of necessity, and when he does so the fireman, or some other competent person, be left in charge. The fireman is required to take charge of the engine when the engineman is absent, and not to leave it until his return; nor suffer any unauthorized person to be upon it.

Plaintiff thus describes the manner in which he was injured: "On the evening of August 3, 1907, when plaintiff had reached the town of Suffolk, in Virginia, on his usual trip from Rocky Mount to Pinners Point, he stopped his train to take on water for his engine. Plaintiff dismounted from cab, directing the fireman to take charge of the engine in his absence, and walked on the ground to the front of the engine, where he proceeded to oil the eccentric of the engine, which needed oiling. Before dismounting he closed the throttle as well as it could be in its leaky condition, set the upright lever at the center of the quadrant, which made it impossible for steam to get into the cylinder and start the engine. He got up on the main driving rod of the engine, a large bar of iron, which connects the two driving wheels and is operated on a crank, so that it rises and falls as the driving wheels revolve. He was on his knees on said driving rod at the front end of the engine, 25 feet from the cab, and from the lever and other appliances that control the engine and out of sight of them, with his arm extended under the boiler oiling the eccentric. While in this position, the fireman being in charge of the engine, and wanting a hammer that was behind the upright lever, carelessly and negligently pushed said lever forward so that he might reach in behind it and get the hammer. This opened the valve that let steam into the cylinder. The leaky throttle had allowed the steam to come down the said valve, and this, being opened by the fireman's careless and negligent act, let the steam into the cylinder and started the engine. The driving rod, being raised by this motion, threw the plaintiff to the ground without any negligence on his part, upon his back, and he fell upon an old iron drawhead and sustained serious injury to his spine, by reason of which injury he is unable to continue his work as an engineman, all of which was the result of said fireman's careless and negligent act," etc. He puts his damage at $30,000.

Defendant filed a special plea in which it sets forth that, "realizing the hazards to which its employés were exposed, and the large premiums demanded of them by the insurance companies, it has, prior to the time when plaintiff entered into the employment, established, for such of its employés as voluntarily desired to join it, a mutual benefit department of its service, called the 'Relief Department.'" The provisions of the Relief Department are set out in full, and a copy of the rules and regulations by which it is operated and controlled are attached and made a part of the plea. Defendant in its special plea also sets out the amount received and paid out by it in the operation of said department, together with the amount for which it is liable by reason of insurance. It further avers that plaintiff, at the time of entering its employment on October 27, 1906, was eligible to, and made a voluntary application in writing in due form to be admitted as a member of, said Relief Department under the terms of which said application he agreed to the terms and conditions of said contract, and further agreed to be bound by all the regulations of said department under the terms of which said application he was, on said 27th day of October, 1906, duly admitted to membership in said Relief Department and remained a member thereof until the 5th day of May, 1908. "That on or about the 2d day of August, 1907, the plaintiff in this action was injured by an accident at Suffolk, Va." That by reason of said injury plaintiff was en-

titled, under the terms of his contract of membership, to benefits provided by said regulations, from the 3d day of August, 1907, at the rate of $2 per day, during the continuance of disability occasioned by said accident and injury, for the term of 52 weeks thence next ensuing, and thereafter at the rate of $1 per day during the continuance of said disability or until he was able to work. That, after said injury, pursuant to his contract of membership and to the regulations of said department, plaintiff was entitled to elect between his right to receive benefits from said department and his right to bring suit against this defendant on account of said injury. That, pursuant to his said right, plaintiff did exercise his election and did accept and receive from the said department benefits to which he was entitled under the regulations thereof, to wit, $2 per day for the term of 84 days, and that, pursuant to said election the said department paid plaintiff, by way of benefits, the sum of $168; said payment being made under the terms of said regulations, by drafts or checks on said relief fund. Defendant set up and relies upon the matters and things set forth in its special plea, the election of plaintiff, and the receipts by him of the benefits to which he was entitled, as a full and complete release from any and all claims or demands against it by reason of the injury sustained by him, all of which is properly pleaded. Defendant also, by proper plea, denied any liability to plaintiff, averring that it was not guilty, etc.

Plaintiff demurred to the special plea for that "it appears from the declaration that the plaintiff was injured through the negligence of a fellow servant, and that section 162 of the Constitution of Virginia (Code 1904, p. cclix) makes null and void any and all and every contract that waives the benefits of that section, and the contract set up by the defendant attempts to waive the benefit of that section."

The cause came on for trial upon the demurrer to the special plea. The court overruled the demurrer and gave plaintiff leave to answer the plea, which he declined to do, whereupon the court rendered judgment, dismissing the action. Plaintiff excepted, assigned as error the action of the court overruling the demurrer, and rendered judgment against him, and brought the case to this court upon a writ of error.

W. S. McNeill, for plaintiff in error.
W. B. McIlwaine and M. Carter Hall, for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge (after stating the facts as above). Passing, for the present, other questions discussed on the argument, we pause to inquire whether, as alleged by plaintiff, the Constitution of Virginia, section 162 (Code 1904, p. cclix), prohibits or invalidates the contract relied upon by defendant, as the basis of the release by the plaintiff, of the cause of action set out in the declaration. For this purpose the averments of the declaration are taken to be admitted by the special plea, and those of the plea to be admitted by the demurrer. So much of section 162 of the Constitution of Virginia as relates to the question presented by the pleadings is in these words:

"The doctrine of fellow servants, so far as it affects the liability of the master for injuries to his servant resulting from the acts or omissions of any other servant, or servants of the common master, to the extent hereinafter stated, is abolished as to every railroad company engaged in the physical construction, repair or maintenance of its roadway, track or any of the structures connected therewith, or in any work in, or upon a car or engine standing upon a track, or, in the physical operation of a train, car, engine or switch, or in any service requiring his presence upon a train, car or engine; and every such employé shall have the same right to recover for every injury suffered by him from the acts or omissions of any other

employé or employés of the common master that a servant would have (at the time when this Constitution goes into effect) if such acts or omissions were those of the master himself in the performance of a non assignable duty."

The section contains further provisions, in regard to liability for the negligence of a fellow servant not material to any phase of this case, and further provides:

"The physical construction, repair or maintenance of the roadway, track or any of the structures connected therewith, and the physical construction, repair, maintenance, cleaning or operation of trains, cars or engines shall be regarded as different departments of labor, within the meaning of this section; knowledge by any such railroad employé injured, of the defective or unsafe character or condition of any machinery, ways, appliances or structures, shall be no defense to an action for injury caused thereby."

After providing for an action by the legal or personal representative of any employé whose death shall be caused by any injury sustained by the acts or omissions of a fellow servant or defective ways, it is provided:

"Every contract or agreement, express or implied, made by an employé to waive the benefits of this section shall be null and void." Section 162, Const. Va.

It was evidently the purpose of the framers of this section of the Constitution of Virginia to abolish the common-law doctrine of the nonliability of the common master for injuries resulting from the negligence, either by acts, or omissions, of a fellow servant, subject to certain exceptions and limitations. Beginning with the enactment of the employer's liability act by the British Parliament, we find, in many American states and continental countries of Europe, the enactment of similar statutes, the purpose and effect of which are either to abolish the doctrine altogether or to restrict and limit its application—they are usually confined to employés of railroads. Their constitutionality has been upheld by the courts with practical uniformity. That they do not conflict with the federal Constitution, or the amendments thereto, is settled. Missouri Pacific Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Chicago, Kansas & Western Railroad Co. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675.

Assuming that the averments of the declaration bring the plaintiff's case within the provisions of the Constitution, and that "he was injured by an act or omission of a fellow servant," as defined and limited by the language of the section, does the contract, set forth in the special plea, waive any of the "benefits" conferred by said section? It is manifest that, by becoming a member of the Relief Department, plaintiff did not waive, or deprive himself of the right to maintain, an action against defendant for an injury sustained by him while in its service as defined by the Constitution "by an act or omission of a fellow servant." There is nothing in the rules or regulations of the Relief Department which could be averred or pleaded in bar of an action brought by him for such injury; nor did he, by becoming a member thereof, make any "contract, express or implied," by which he waived any of the "benefits" conferred upon, or secured to, him by the Constitution. Giving the language of the section the most liberal

construction possible, nothing more is secured to the employé, injured by the negligence of a fellow servant, than the right to recover from the common master damages for such injury, in the same manner and to the same extent, as if the same acts or omissions were those of the master himself in the performance of a nonassignable duty. We are unable to perceive how, by any possible interpretation, the scheme known as the Relief Department, or becoming a member thereof, can be said to waive the right of action secured to the employé by the Constitution. As uniformly held by other courts, in which the same contention has been made, the employé does not waive, or agree to waive, any rights to which he is entitled by becoming a member of the Relief Department. He simply agrees that, after the injury is sustained, and his cause of action accrues, he will elect whether to sue for damages or accept the benefits secured by the Relief Department—that he will not do both. There is no suggestion that plaintiff made his election under such circumstances or conditions, either mental, moral, or physical, making it inequitable to enforce it; similar statutes have been enacted, whereby agreements made in advance of an injury, caused by the negligence of a fellow servant, or defective appliances, ways, or means are declared to be invalid. The courts have held that becoming a member of the Relief Department was not within the letter or spirit of these statutes. Pittsburgh, C., C. & St. L. R. R. v. Cox, 55 Ohio St. 497, 45 N. E. 641, 35 L. R. A. 511; Railroad v. Moore, 152 Ind. 345, 53 N. E. 290, 44 L. R. A. 643; Hamilton v. Railroad (C. C.) 118 Fed. 94. At the moment plaintiff sustained the injury for which this action is brought, the right of action, or "benefit," secured to him by the Constitution (section 162) of Virginia was complete; his membership in the Relief Department did not affect it in the slightest degree.

Defendant insists that, the ground of the demurrer being specifically limited to the provisions of the section 162 of the Constitution, it is not open to plaintiff, upon this writ of error, to attack the special plea for any other ground. The assignment of error is confined to the action of the court in overruling the demurrer and rendering judgment against plaintiff. This being an action at law, we are governed, in questions of practice, as near as may be, by rules prevailing in the courts of the state of Virginia. Passing the question of practice, we will consider the other question, argued by counsel for plaintiff in a well-considered oral argument and printed brief, in which he insists that, independent of the prohibitory provisions of the Constitution, the contract entered into by plaintiff, when he became a member of the Relief Department, is against public policy and void. In passing upon this contention we are confined to averments in the special plea, which are admitted pro hac vice to be true. This excludes any suggestion that the plaintiff was not fully advised of the regulations of the Relief Department as it alleges "that a book containing the regulations of the said Relief Department was on or about May 30, 1907, delivered to the plaintiff," or that he did not enter into it voluntarily, as it is alleged that "he made a voluntary application in writing in due and legal form to be admitted as a member of said Relief Department," or that, after sustaining the injury, he was under coercion, or was misled, or

kept in ignorance of his rights in the premises, as it is alleged "that he did exercise his election and did accept and receive from said department benefits to which he was entitled under the regulations thereof."

The sole question, therefore, is whether there is such inherent vice in the plan or scheme, established by defendant, set forth in the plea, as brings it under the condemnation of the principles of the common law, rendering all contracts made, and all acts done under and pursuant to it, null and void, or whether the relations existing between the plaintiff and the defendant were such as to render it contrary to sound public policy for them to enter into the contract, or to enforce rights, or set up defenses acquired under it. The question of the validity of the contract, or contracts, in all respects similar to the one before us, has been so fully discussed by the courts, both state and federal, and so uniformily upheld, that nothing new is open to be said. It has been expressly decided by this court. In A. C. L. R. Co. v. Dunning, 166 Fed. 850, 94 C. C. A. 128, in a well-considered and amply-sustained opinion by Judge Morris, in which Mr. Chief Justice Fuller concurred, the same contract relied upon by defendant herein was upheld. The learned judge says:

"By a great number of carefully considered adjudications of the courts, both state and federal, contracts of this character have been upheld and determined not to be against a sound public policy, but distinctly beneficial to the employé, as well as wise on the part of the employer."

He cites a large number of cases sustaining his opinion. It is not necessary that we do more than refer to the volume of the Federal Reporter in which the case is reported. The basis upon which all of the decisions rest is that, by becoming a member of the Relief Department, the employé does not waive, or contract against, liability for damages for an injury sustained by the negligence of the employé. That, after sustaining the injury, he is free to maintain an action for damages without regard to his being a member of the department. That he is entitled to the benefits secured by membership without regard to negligence or legal liability of the employer. That when he elects to take such benefits he releases, and not until then, the employer from other or further liability. With an evident and frequently expressed determination to strictly construe all contracts made by employés of public service corporations, or those in whose service the employment involves unusual hazard, waiving any rights, the courts have, with practical uniformity, and by the same process of reasoning, upheld this plan or scheme, adopted by railroad companies, and, so far as we are informed, concurred in by their employés.

This injury having occurred prior to the enactment of the federal employer's liability act (April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]), the provision of that statute in regard to these contracts is not presented.

The judgment must be affirmed.