## DROBNEY v. LUKENS IRON & STEEL CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1913.)

No. 129.

**1. RELEASE (§ 24*)—MISREPRESENTATION—FRAUD—PROOF AT LAW.**

Where plaintiff, an illiterate widow of one of defendant's employés, was induced to execute a receipt for $1,000 and for $1, releasing defendant from all liability arising out of the death of her husband, on the misrepresentation that the instrument was a mere receipt for insurance money and that the dollar was a present to her infant child, such misrepresentation was a direct fraud in the execution of the document which could be proven at law.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 41–46; Dec. Dig. § 24.*]

**2. RELEASE (§ 13*)—LIABILITY FOR DEATH—MUTUAL BENEFIT SOCIETY—INSURANCE.**

Defendant company maintained and operated in connection with its business an employés' mutual benefit society, taking 10 cents a month from the wages of each employé for the benefit of the society, and furnishing the necessary additional funds and clerical force to operate it. The constitution and by-laws provided that the acceptance of benefits for death or permanent disability of an employé, resulting from accident in the company's service, should operate as a full satisfaction of any and all claims against the company on the part of the servant or by all who might legally assert such claim, etc. *Held*, that where the widow of an employé killed in defendant's service received $1,000 benefit and executed a release to the society, by which, in consideration of that sum and the further sum of $1 paid by defendant, she released it from all liability on account of the death of her husband, the transaction created a situation which relieved defendant from all liability because of a valuable consideration moving from it to the beneficial association and to its members, in the absence of fraud or mistake, and was a defense to an action for intestate's death.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 21–27, 29; Dec. Dig. § 13.*]

**3. RELEASE (§ 24*)—FRAUD—RETURN OF MONEY—TENDER.**

Defendant maintained an employés' benefit society, under the constitution and by-laws of which relatives of an employé were entitled to a specific benefit in case of a member's death, the receipt of which should operate to relieve defendant from any liability by reason of such death. After decedent was killed in the course of his employment, his widow was paid $1,000 by the association and $1 by defendant. She executed a receipt for the two sums, releasing defendant from all liability by reason of decedent's death. The widow subsequently, claiming that she was induced to sign the release by misrepresentation that it was for insurance money and that the dollar was a present for her child, tendered a return of the insurance money to defendant, and sued for damages. *Held*, that the tender of the insurance money to defendant, instead of to the beneficial association, was not a valid tender, and that her failure to tender the sum to the association was a bar to recovery.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 41–46; Dec. Dig. § 24.*]

Coxe, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York; Walter C. Noyes, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Marie Drobney against the Lukens Iron & Steel Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Rufus M. Overlander, of New York City (H. C. Smyth, of New York City, of counsel, and M. F. Tompkins, of New York City, on the brief), for plaintiff in error.

Wingate & Cullen, of New York City (G. W. Wingate, of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an action by the plaintiff as widow of Martin Drobney to recover damages for his death, under the statute of the state of Pennsylvania. He was a member of the Wawasset Beneficial Society composed of defendant's employés. The form of application for membership is as follows:

"To the Wawasset Beneficial Society:

"I ...... residing in the borough township of ...... in ...... county, Pennsylvania, aged, at last birthday ...... years and employed by or entering
(Cross out one)
(Cross out one)
the employ of the Lukens Iron & Steel Co., as a ...... apply to be admitted as a member of the Wawasset Beneficial Society, hereby consenting to be bound by the constitution, by-laws and rules of said society, which I have read or had read to me, and by any amendments thereto which may hereafter be made by the board of managers of the society and agree that an admission fee of $1.00 and dues at the rate of ...... per month in advance shall be deducted by the pay department of the Lukens Iron & Steel Co., or its successors, while I am a member of the said society, from the wages that may be due me from my employment as aforesaid, and paid to the treasurer, or other proper officer, of the said beneficial society. I also agree that in consideration of the amount paid or to be paid by the said company into the treasury of the said beneficial society, namely, ten cents per month for each beneficial member of the society at work in their employ and the collection of members' dues and supplying office room and clerical service by the company without cost to the society, and the agreement and guarantee of the company, as set forth in Art. VII of the constitution, the payment by the society to me or to my representatives of the benefits due on account of my permanent disability or death resulting from accident occurring in the company's service, shall satisfy all claims against the said company for damages arising from or growing out of said permanent disability or death unless before payment of such benefits notice is given to the president of the society of intention to seek indemnity from the company or to bring suit at law and further, that no part of said benefit for death or permanent disability shall be due or payable unless and until good and sufficient releases shall be delivered to the president of the said beneficial society of all claims against the said society and to an executive officer of the said company as against said company arising from or growing out of my death or permanent disablement, said releases having been duly executed by me or in the event of my death or of my being disqualified by reason of physical impairment from acting on my own behalf, by all who might legally assert such claims; and further, if any suit shall be brought against the said company for damages arising from or growing out of permanent disability or death occurring to me, the said benefits otherwise payable and all such obligations of said beneficial society and of said company created by my membership in the said society shall thereupon be forfeited without any declaration or other act by the said beneficial society or said company. * * *"

Article 7, section 1, of the constitution, provides:

"Section 1. The provisions of the society and the schedule of benefits payable are based upon an agreement of the Lukens Iron & Steel Co. to supply office room and clerical service, and collect the members' dues by deduction therefor from wages payable, act as treasurer of the society, also to make a contribution to the treasury of ten cents per month for each beneficial member at work in their employ; also to guarantee the payment of all benefits to the members of the society by advance or loan to the society from time to time of such sum or sums as may be needed, which shall be repaid from surplus income of the society from time to time as it may be able to do, in consideration of which every applicant for membership shall agree that acceptance of benefits for death or permanent disability resulting from accidents in the company's service shall operate as full satisfaction of any and all claims against the company on the part of himself or of any and all who might legally assert such claim on account of such permanent disability or death."

Article 7, section 6 (a), of the by-laws, provides:

"Sec. 6(a): In consideration of the agreement and guarantee of the company as set forth in article 7 of the constitution, the acceptance by the member of benefits for permanent disability resulting from accident occurring in their service shall operate as satisfaction of all claims against the company for damages arising from or growing out of such disability unless before payment of any such benefits notice is given to the president of the society of intention to seek indemnity from the company, and, further, in the event of the disability or death of a member resulting from accident occurring in the company's service, no part of the benefits for death or permanent disability shall be due or payable unless and until good and sufficient releases shall be delivered to the president of the society of all claims against the society and to an executive officer of the company as against the company, arising from or growing out of the death or permanent disability of the member, said releases having been duly executed by the member or by all who might legally assert such claims or by those legally competent to release for them, and, further, if any suit shall be brought against the company for damages arising from or growing out of permanent disability or death occurring to a member, or if the member or his legal representative shall elect to sue at law and refuse or fail to execute and deliver the releases as above specified the benefits otherwise payable and all obligations of the society and of the company, created by the membership of such member in the society, shall thereupon be forfeited without any declaration or other act by the society or the company, but the president of the society may, in conjunction with an executive officer of the company, at their discretion, waive such forfeiture upon condition that all pending suits shall first be dismissed and the specified releases executed and delivered."

The plaintiff, an illiterate woman unable to speak English or to read or write, executed the following document:

"Received of Wawasset Beneficial Society the sum of one thousand x/100 dollars in full of all benefits due under certificate of membership No. 742 on account of the accident and death to Mart Drobi No. 1176 and in consideration of said payment and the further sum of one dollar to me in hand paid by the Lukens Iron and Steel Company, I do hereby release the said company of and from all suits, demands and damages for or on account of the accident and death to Mart Drobi No. 1176 as aforesaid.

"Witness my hand and seal this 8th day of April, A. D. 1911.

her<br>
"Mrs. M. X Drobi [L. S.]"<br>
mark

[1] Upon executing the above she received two checks which she deposited in bank and has collected, one for the sum of $1 and the

other for the sum of $1,000. The trial judge directed a verdict for the defendant. There was testimony that the plaintiff was told before signing the above that it was merely a receipt for insurance money, and that the $1 mentioned was a present to the baby. This we think presented a question of fact for the jury who, if they found the allegations to be true, might have treated the document so far as it was a release as never having had any legal existence because of fraudulent representations to the plaintiff as to its purport in this respect. It would not be a case of fraudulent collateral representations by which the plaintiff was induced to sign what she knew to be a release, which could only be corrected in equity, but direct fraud in the execution of the document by making her think that it was not a release, which could be proven at law. Hartshorn v. Day, 19 How. 211, 220, 15 L. Ed. 605.

[2] However, this inquiry need not be further prosecuted because we think that, striking out all evidence of a release in the document, it remains a receipt for insurance money, as she was correctly told it was. This payment could have been made and accepted only in accordance with the explicit provisions of the constitution and by-laws of the beneficial association. They made it a full satisfaction of all claims by Martin Drobney or his representatives against the defendant. The plaintiff, though not a member, received the money through her husband's membership. It made no difference whether she could read or not, or whether she knew the conditions upon which the payment was made. The transaction created a situation which relieved the defendant of all liability because of a valuable consideration moving from it to the beneficial association and its members. Johnson v. Phila. & Reading R. R. Co., 163 Pa. 127, 29 Atl. 854; Ringle v. Penna. R. R., 164 Pa. 529, 30 Atl. 492, 44 Am. St. Rep. 628; Reese v. Penna. R. R. Co., 229 Pa. 340, 78 Atl. 851; Day v. Coast Line, 179 Fed. 26, 102 C. C. A. 654. Of this right, in the absence of fraud or mutual mistake, no court can deprive the defendant.

[3] If fraud had been proved in inducing the plaintiff to accept the insurance money, she could not maintain this action without returning or offering to return the money to the beneficial association. The case is quite unlike those cited, where a release is signed upon the strength of an untrue statement that the money paid was something different from what the documents called for as, for instance, that it was wages or a gift, instead of a consideration for a release. Under such circumstances there need be no tender. For this reason the plaintiff might not be obliged to return the dollar if she received it upon the representation that it was a present to the baby. In accordance with the advice of her attorney to return the insurance money, the plaintiff drew it out of bank and tendered it to one Jackson, an agent of the defendant. This is denied by Jackson, but, if it were true, the tender would be unavailing because the defendant was under no circumstances entitled to the money, and a tender to it was not a tender to the beneficial association. She was acting under advice at this time, and should have made a proper tender. It would be quite inequitable to permit her to retain the money which the

constitution and by-laws of the beneficial society provided should be forfeited if she brought suit against the defendant, or, if received, should be full satisfaction of all claims and at the same time permit her to maintain this action.

The judgment is affirmed.

COXE, Circuit Judge (dissenting). The plaintiff in error has a cause of action if she has not released the defendant by accepting the insurance money and signing a receipt in full for death claim. If the papers bearing her mark are to be construed literally against her, there is no doubt that she has signed away her entire right to recover for the death of her husband. The plaintiff is an ignorant foreigner, unable to read or write. Her husband was 42 years of age when he was killed and she was left a widow with five children. She does not understand English and had to transact business through an interpreter. The receipt signed by her contained a full release of her claims under the benefit policy for $1,000, and for this sum and $1 paid by a separate check, she released all her claims against the defendant for the death of her husband. She insists that she did not intend to sign away her right of action for her husband's death and, finding that she had done so, she endeavored to pay back the money. She was unable to see the president of the defendant, but did in fact make a tender of the total amount paid and interest ($1007.99) to Mr. Jackson, who was employed by the defendant and who had represented it throughout the transaction. He refused to accept the money. It seems to me that the testimony presented a question of fact which was for the jury to determine. The testimony was not persuasive in favor of the plaintiff's contention, but it cannot be said that there was no evidence to support it. The jury might have found that, being entirely ignorant of our language and not appreciating her rights, she had been induced to sign the paper without knowing the legal aspects of the situation. The jury might have found further that she supposed the $1000 was as the receipt stated, for "funeral benefits" and that she never intended to release the death claim. That she should have released for $1 a claim for the death of her husband, who was but 42 years of age seems highly improbable. I do not think it is necessary to establish actual false statements on the part of the defendant. If the plaintiff, through ignorance of her rights and a misunderstanding of the facts, was induced by the defendant or its agents to sign a release which she never intended to sign, she should not be held to its terms. Three days after her husband's death, Jackson, representing the defendant, called at her home and requested her son, she being away at the time, to ask her to come to the office and get her insurance money. On reaching the office, she was asked to sign the two receipts, and did so, believing that they related to the insurance money. She expressly stated that she expected compensation for the death of her husband and was told by Jackson that when the president of the company returned, he would see that she received such compensation. It was, then, clearly a question of fact for the jury to say whether plaintiff's act was voluntary or was induced by the action of the defendant's agent in stating

that the $1 check was intended as a present to the baby and that the $1000 was for "funeral benefits"; and also whether it was induced by his failure to explain to her fully the contents of the papers and their true purport and intent. So far as her being able to understand these papers, they might as well have been written in Greek. In a similar case, the Supreme Court approved the following language in the charge: .

"When it appears that either party is in a situation as to his health, physical condition, or as to the state of his mind that makes it probable that he acted without deliberation, without an understanding of the act with which he is charged, the instrument itself may be disregarded." Union Pacific Railway v. Harris, 158 U. S. 326, 331, 15 Sup. Ct. 843, 845 (39 L. Ed. 1003).

The opinion of the majority of the court expressly recognizes this doctrine, for it says of the testimony as to false representations that

"it presented a question of fact for the jury who, if they found the allegations to be true, might have treated the document so far as it was a release as never having had any legal existence because of fraudulent representations to the plaintiff as to its purport in this respect."

But it is said, in substance, that if the portion of the document which releases the defendant from liability be stricken out, it still remains a receipt for the insurance money, which could have been made and accepted only in accordance with the explicit provisions of the constitution and by-laws of the insurance association. In other words, if I understand the proposition, it is that where a party is induced to sign a paper by fraud, it may still be considered a valid document as to that part which he might have signed if the fraud had not been perpetrated. I do not so understand the law. In my judgment, if the plaintiff was induced to sign this paper by stating what was false or suppressing what was true, the entire transaction was absolutely null and void. At least it was a question for the jury to say whether she would have received the insurance money, in any circumstances, after she had discovered that the defendant was endeavoring to secure a release of the claim for her husband's death.

Again, it is said that the plaintiff did not make the proper tender of the money because it was tendered to Jackson and not to an officer of the beneficial association. It is not clear that money, received in such circumstances, must be returned as a prerequisite to commencing the action. In Mullen v. Old Colony R. R., 127 Mass. 86, 34 Am. Rep. 349, the court says:

"The ruling at the trial was that, even if it were true that the plaintiff was induced to sign the paper by the fraud of the defendant's agent as to its contents, he could not maintain his action without first returning the money which he received when the paper was signed. * * * In the case at bar, if the evidence for the plaintiff was true, he signed the paper which purports to show a settlement of his claim, believing it to be a totally different paper from what it in fact was. Signing in that belief, in consequence of the fraudulent representations of the defendant, he is not bound by it, because he never made the agreement which the paper indicates. He is not attempting to avoid a contract which he has made; but is showing that he did not make the contract which he apparently made. If this fact is established, it establishes the further fact that he did not receive the money, which was paid him when the paper was signed, in consideration of the settlement of his claim."

But, assuming that a tender is necessary, it was made when the money was offered to Jackson in the office of the defendant and in the absence of the president. The plaintiff was told by Jackson, "I don't want it, go home." It must be remembered that the beneficial society was confined exclusively to the employés of the defendant, who furnished office room and managed the finances of the society. The only person the plaintiff knew in the transaction was Jackson and at least it was for the jury to say whether under all the circumstances a tender to him was not sufficient. The question is not what this court may think or what the circuit court thought of the testimony, but simply, was there a question which the jury might answer in favor of the plaintiff. I cannot avoid the conclusion that there was such a question. It seems to me that it is a mistake to apply to this case rules which might be applicable if the parties were equally intelligent and able to protect their respective interests. This plaintiff, by reason of her ignorance and utter inability to understand our language, was as helpless in the hands of the defendant and its agents as an infant or an imbecile. In such circumstances it was their duty to tell her the truth, not only, but to be more than ordinarily solicitous that she fully comprehended what she was doing and the true import of the papers signed by her. Let us assume, in order to test the question, that there was a deliberate scheme to trick the plaintiff into releasing her cause of action and to consummate the fraud by preventing her from making a technically perfect tender. The steps taken were, or the jury may find that they were, all a part of the general purpose to defraud. If Jackson did not represent the beneficial society, he surety represented the defendant and, having refused the tender with no word of explanation, he left the plaintiff to infer that it would not be received in any circumstances. It is this deception, by its own agent, of which the defendant seeks to take advantage. If Jackson had not misled the plaintiff she might have found the proper person and tendered the amount to him. The jury may have found that his action constituted a deliberate deception for the express purpose of defeating the plaintiff's claim. The scheme should not succeed simply because it was shrewdly planned. I think the controversy should have been submitted to the jury.